UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CIVIL ACTION

8:23cv 885 TPB - n Sp

THOMAS STALCUP,

                             Plaintiff

vs.

THE FEDERAL BUREAU OF INVESTIGATION;
and THE UNITED STATES NAVY,

                             Defendants

)
)
)
)
)
)
)
)
)
)

## PLAINTIFF'S COMPLAINT FOR RELIEF AND DAMAGES

### NATURE OF THE CASE

This is a case brought under the Freedom of Information Act ("FOIA") against the FBI and

US Navy for records related to a missile test conducted by the US Navy near the crash of TWA

Flight 800 in 1996. Many of these records were ordered into FBI custody by Navy personnel

immediately after the crash.

## I.     INTRODUCTION AND UNDISPUTED FACTS

1. This action concerns TWA Flight 800, a 747 commercial airliner that exploded in midair

   on July 17, 1996, en route to Paris from John F. Kennedy Airport on Long Island, NY. The

   National Transportation Safety Board ("NTSB") could not definitively determine its cause.

2. The NTSB's lack of certainty was, in large part, attributable to the concealment of an

   accidental missile strike that occurred during a Department of Defense test conducted in

   the vicinity by the US Navy. The existence of this cover-up and the identification of

TKO- 68428
#402-00

individuals involved was discovered through newly obtained evidence during the course of discovery in a pending case against the Department of Defense, docketed at the First Circuit as Case No. 22-1405.

3. The missile test in question began when a Navy aircraft launched aerial missile targets near Long Island, followed by an interceptor missile fired at one of the aerial targets from a missile ship below. The interceptor missile locked onto TWA Flight 800 instead.

4. From the cockpit of his Black Hawk helicopter over Long Island, Captain Chris Baur saw an object with a "rocket-type motor" that flew over the ocean and "struck" TWA Flight 800. Dozens on Long Island's south shore also saw a missile rise off the ocean and explode into TWA Flight 800. The plane then broke in half in midair and fell to the sea in flames.

5. The mishap was immediately covered up by military, DOD, FBI, and contractor officials.

## The Improper Transfer and Concealment of Missile Test Records

6. As lighter debris was still falling from the sky, Navy Rear Admiral George Huchting ordered all Navy radar tapes under his command that could have recorded the intercept over to the FBI, while other commands followed suit. Consequently, the FBI had exclusive custody of all military radar and satellite imagery of the mishap. However, the FBI failed to share these records with the NTSB, the agency responsible for determining the cause of the crash.

7. Recently, FBI records obtained during the related case now pending at the 1st Circuit have described an object recorded on confiscated Navy radar tapes that "head[ed] straight for" TWA 800 and "spiral[ed]" away "after impact". This new evidence reveals that the FBI was in possession of crucial information related to the cause of the crash, which was not

disclosed to the NTSB, resulting in the Safety Board's inability to definitively determine the cause of the incident.

8. These improperly transferred radar tapes and related records, as well as the altering and concealment of physical evidence, are the subject matter of this suit.

**The Altering and Concealment of Physical Evidence From the Missile Impact**

9. Upon the detonation of the interceptor missile below TWA Flight 800, a significant portion of the aircraft's lower fuselage was blown inward, resulting in it curling over itself by "180" degrees at the point where the aircraft broke in half. In an instant, the exterior surface of the affected section, which originally faced downward, was bent upward and into the plane. It then detached from the aircraft, and fluttered to the surface along with hundreds of adjacent parts, resembling leaves falling from a tree.

10. After the NTSB took custody of the wreckage, the agency altered that vital piece of evidence. Specifically, the severe inward curl was flattened to conceal the missile's explosion from below, thus significantly impeding the NTSB's ability to determine the cause of the crash.

11. Additionally, a portion of the right wing exhibited other blast damage, and upon testing, it tested positive for explosive residues. Shockingly, the FBI removed it from the NTSB investigation, denying the agency crucial evidence that could have contributed to identifying the cause of the incident.

### The NTSB Whistleblowers and Recent FOIA Discovery

12. Six whistleblowers from the NTSB investigation, including senior NTSB investigator (Ret.) Hank Hughes, who was a TWA Flight 800 Group Chairman, publicly disclosed a cover-up, claiming that an external detonation caused the crash.

13. Subsequently, Plaintiff Dr. Thomas Stalcup filed a Freedom of Information Act ("FOIA") lawsuit against the Department of Defense ("DOD") in federal District Court in Boston, MA, demanding all records of East Coast missile testing in 1996. This is the case mentioned above now pending at the 1st Circuit.

14. During the unprecedented discovery phase, Stalcup deposed former Secretary of Defense William Perry and several other high-ranking officials, including Navy Rear Admiral George Huchting. Admiral Huchting testified that the only other time in history that he is aware of radar data being transferred out of Navy custody was six years prior, during the USS Vincennes incident, in which the Navy shot down an Iranian commercial airliner over the Persian Gulf. Notably, the same Navy missile system was involved in both tragedies.

15. Furthermore, during discovery, Dr. Stalcup demonstrated that the DOD commenced live fire missile tests in the New Jersey and New York vicinity three months before TWA Flight 800 crashed. The missile that detonated below TWA Flight 800 was one of many launched near Long Island in 1996, both before and after TWA Flight 800 crashed. Initially, the DOD denied conducting any missile testing off the East Coast that year, but now, the DOD acknowledges that live missiles were fired in the area during the relevant time frame.

16. Despite releasing segments of limited test records, the DOD did not produce any records from the test responsible for the TWA Flight 800 crash because the agency transferred those records to the FBI.

17. During discovery in Stalcup v. DOD, Stalcup served the FBI with a court-issued subpoena for the records in question, and the FBI did not object. The agency also informed the Magistrate Judge overseeing discovery that it would fully comply with the subpoena.

18. However, after the FBI located a limited set of records indicating its involvement in covering up the shoot-down, the agency stopped its search and had one of its officers draft a short affidavit describing its limited search up until that point, claiming it could not locate the requested radar tapes.

19. The DOD recommended that Stalcup request the missing records from the FBI and the Navy under FOIA.

### The FBI and Navy FOIA Requests

20. On June 18th, 2019, Plaintiff Stalcup submitted a FOIA request to the United States Navy, specifically the Naval Sea Systems Command, for all records related to DOD missile tests and the TWA Flight 800 incident. (Exhibit 1).

21. Despite Plaintiff's FOIA request, the Navy failed to disclose any such records. Therefore, on July 23rd, 2019, Plaintiff Stalcup filed an administrative appeal with the Navy, requesting the release of the records. (Exhibit 2).

22. On October 3rd, 2019, Plaintiff Stalcup submitted a FOIA request to the FBI for all records related to the DOD missile tests and the TWA Flight 800 incident. (Exhibit 3).

23. Despite Plaintiff's FOIA request, the FBI failed to disclose any such records. Therefore, on September 28, 2020, Plaintiff Stalcup filed an administrative appeal with the FBI, requesting the release of the records. (Exhibit 4).

24. To date, the FBI and the Navy have not provided any records in response to these requests. Plaintiff Stalcup has exhausted all administrative remedies to obtain these records from these agencies, and as a result, both the FBI and the Navy are now subject to suit in this Court under FOIA.

## II.   JURISDICTION AND VENUE

25. Subject matter jurisdiction exists pursuant to 5 USC § 552(a)(4)(B) which grants a district court of the United States jurisdiction to enjoin an agency from improperly withholding records and to order said agency to produce such records to the complainant. Venue is proper in the Middle District of Florida under 5 USC § 552(a)(4)(B) which grants jurisdiction to the district court in the district in which the complainant, Dr. Thomas Stalcup, lives.

## III.   THE PARTIES

**a.     The Plaintiff**

26. Dr. Thomas F. Stalcup is the Plaintiff in this action. He resides in Palm Harbor, FL and brings this action pro se.

**b.     The Defendants**

27. Defendant Federal Bureau of Investigation of 935 Pennsylvania Avenue NW, Washington, DC 20535 is an agency of the United States.

28. Defendant United States Navy of 1333 Isaac Hull Ave, Washington, DC 20376 is an agency of the United States.

## IV.     SUMMARY

29. Plaintiff Thomas Stalcup brings this action against the FBI and US Navy pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking declaratory and injunctive relief, as well as damages, arising from the agencies' failure to produce records requested by Plaintiff Stalcup.

30. Plaintiff is a physicist and investigative journalist who has been investigating the cause of the crash of TWA Flight 800, which occurred on July 17, 1996, off the coast of Long Island, New York, killing all 230 people on board.

31. Plaintiff seeks records related to missile test data and other documents from the Navy and FBI under FOIA, including records related to missile tests conducted near Long Island in 1996.

32. Despite Plaintiff's requests for records, the agencies have failed to produce the requested records within the time frame required by FOIA, and they have not provided a valid basis for withholding the records or any portions thereof.

33. The agencies' failure to produce the requested records, and their withholding of records in violation of FOIA, has caused harm to Plaintiff, including but not limited to delays in litigation, difficulty in conducting research and analysis, and hindrance in the ability to report on matters of public interest.

34. Plaintiff also has evidence that certain officials within the agencies engaged in a pattern of fraud to conceal and alter evidence of the government's accidental shoot-down of TWA

Flight 800. Such activity waives the government's right to claim exemptions under FOIA for the production of the requested materials.

35. The pattern of fraud and concealment has delayed or prevented the production of records requested by Plaintiff pursuant to FOIA, causing harm to Plaintiff, including but not limited to delays in litigation, difficulty in conducting research and analysis, and hindrance in the ability to report on matters of public interest.

36. Plaintiff seeks declaratory and injunctive relief requiring the agencies to produce the requested records, as well as damages arising from the agencies' violation of FOIA.

37. Plaintiff also seeks reasonable attorneys' fees and costs incurred in bringing this action, pursuant to FOIA and other applicable law.

## V.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a. Enjoin the FBI and Navy from further withholding the requested records, and order them to produce the requested records within 20 days of the Court's order;

b. Declare that the FBI and Navy have violated FOIA by failing to produce the requested records;

c. Declaring that the FBI and Navy officials' participation in a pattern of concealing, altering, and falsifying evidence waives their right to claim any FOIA exemptions for withholding the requested records;

d. Award Plaintiff damages, including but not limited to any costs and attorney's fees incurred in this action;

e. Order such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of April, 2023.

*/s/ Thomas Stalcup*
Thomas Stalcup, PhD
961 Kent Ln.
Palm Harbor, FL 34683
(774) 392-0856
stalcupt@gmail.com

<u>CERTIFICATE OF SERVICE</u>

    I certify that the foregoing document should soon be served via Priority FedEx mailing service to the named Defendants.

Dated: April, 20, 2023

*/s/ Thomas Stalcup*
Thomas Stalcup, PhD